MR. JUSTICE SHEEHY,
dissenting:
The facts recited in the majority opinion require further elaboration. After the telephone conversation with Mary Kee, Mac House went out and searched for Undersheriff Floyd Fisher, whom he found at the Cattlemen’s Restaurant, having his dinner at 8:30 p.m. House advised Under-sheriff Fisher that he had information that Arthur Magnuson was intoxicated and was driving his Ford Bronco. In response to questions from Fisher, House described the vehicle that Magnuson was driving, and from the description Fisher remembered the vehicle as he had seen it parked outside of bars in the vicinity. House also advised the undersheriff that Magnuson’s usual hangout was Tracy’s Bar. When he had finished his dinner, the undersheriff asked House if he would “like to take a ride” and the two of them got into Fisher’s vehicle. As they drove toward Tracy’s Bar, they saw Magnuson’s vehicle coming in the opposite direction on Highway 87. Fisher observed that Magnuson’s vehicle crossed the centerline several times and *409 exhibited other signs of erratic driving.
The State concedes that the Musselshell County Drug and Alcohol Program is federally funded, and the record shows that Magnuson had been attending counseling sessions with Mac House for six weeks to two months before the driving charge occurred.
The State first contends that the information received by House from Fisher was not the kind of patient information which Congress intended to protect. The State has pointed to 42 C.F.R. Section 2.11(o), which defines records as including information “received or acquired in connection with the performance of any alcohol or drug abuse prevention function.”
The term “record” is very broadly defined in the federal regulation. It is not limited to information received from the patient alone, but includes “any information” recorded or unrecorded, “relating to a patient.”
When Mary Kee used the telephone here looking for help, the number that she called was answered by Mac House, from the Musselshell Drug and Alcohol office. The information which she relayed to him about Magnuson “related to a patient.” That information, and the further information about Magnuson’s usual hangout which apparently Mac House also knew, were relayed by him to Undersheriff Fisher. I determine that such information is included within the term “record” the relaying of which is prohibited by the federal regulation.
It is a close question whether the information conveyed by House to Fisher was used to initiate criminal charges against Magnuson. It does appear clear from the record that while Fisher was investigating Magnuson in the presence and with the cooperation of House that the criminal charges were initiated, based upon the observations that Fisher made during the investigation.
The State contended and the majority apparently agrees that Congress did not intend to create a “sanctuary” for a patient from prosecution for its criminal acts. Whatever *410 that may mean, it is fully clear that Congress did intend that no information regarding a patient should be imparted by one who obtained the information in a federally-funded program to initiate or substantiate any criminal charges against the patient or to conduct any investigation of a patient. Here Arthur Magnuson was a patient, and Mac House, who was treating him under a federally-funded program used confidential information gained through such program to cause an investigation to be made of Magnuson.
As to whether the prohibition against release of information under the federally-funded program should be balanced with state policy against drunk driving, the line of demarcation is obviously hard to draw. Certainly there will be instances where the severity of the crime or the danger to society will be of such gravity as to require a prosecution even though information from such a federally-funded program was obtained. What is overweighing in this case, however, is not only that Mac House supplied the information, but then he actively participated in the investigation by accompanying the deputy to a place where Magnuson could be found. In so doing, he abused all the principles of the confidential relationship in which he was a paid participant. Certainly Congress did not anticipate that kind of use of its statutorily-protected information.
Finally I disagree with the majority that the remedy provided in Title 42 U.S.C.A. Section 4582 is sufficient to enforce the provisions of the confidentiality of information under the federal provisions. The majority finds that the remedy provided in the federal act is enough for the Congress intended no more.
The answer to that contention is found in reviewing the Congressional reasons for establishing the federally-funded project. The object is to attract patients, free from stigma and criminal prosecution from what may be revealed by them in the course of their treatment. A mere fine against the violator of such confidence does not protect the patient whose confidence has been abused. It is more by assuring *411 the confidentiality of such information in this instance than in fining Mac House, that these objectives will be achieved. In fact the record is bare in this case that any retributive action has been brought against Mac House for his obvious violation of the confidential relationship.
I would determine that the federal statute, with its obvious objectives, makes it imperative that we do not enforce criminal prosecutions based on information received from persons who seek help from alcoholism in federally-funded projects. I expressly dissent.
MR. JUSTICE SHEA dissents, and will file a written dissent later.